Okay, you may begin. Thank you. May I please the court Brian Coide for Uniloc? The PTAP erred because under Chevron Step 1, the AIA unambiguously precludes Section 101 challenges to IPR amendments. Well, there's no need to go beyond that point. I'll also address Chevron Step 2 should the court disagree and view the statute as ambiguous. Finally, I want to briefly address why this appeal is not moved in view of the district court's ineligibility rulings on the original claims. Counsel, on that last question, what exactly do you believe is the relief that you could be provided? It's the entry of our amended claim. I mean, the fact that we filed the motion to amend during the motion, we want it to be entered. I think we're in agreement with the Patent Office on the mootness issue and they lay out as well as we do about how, you know, just because the original claims are canceled, there's still the possibility of substitute claims to be replaced. Well, but let me ask you this. As we said in aqua products, all the motion does is enter the request to amend into the IPR, but under our decision in Fresenius, you have to look to the finality of the judgment and the judgment in the IPR that would either allow or disallow the claim isn't final yet because it can't be final until we say it's final, right? Right. Your Honor, you mean the judgment from the district court? No, a judgment from the PTAC can't be final until we say it's final. That's right, Your Honor. Yes. Right. And your problem is you have an open IPR, but you already have a patent, all of whose claims have been declared invalid by a district court judgment that is final. So how do we allow an alternative claim to issue when there's no claim that could amend, that could be amended? I think, Your Honor, the key is the timing. Again, the motion to amend was filed during the pendency. I understand what Your Honor is saying. We couldn't find any authority. I don't think any of the other parties found any authority for this exact situation. But I don't view the case law precepts of being so rigid that the amended claims have to then be appended to a patent that doesn't have to be canceled claims. Again, we followed the procedure. We moved to amend. And it seems fundamentally unfair just to have the timing of the various cases result in being robbed of your right to move to amend and do that. Under Fresenius and E+, I'm sure those parties thought it was fundamentally unfair to have the timing of the respective proceedings deprive them of a substantial judgment and of a patent that had been deemed valid by the district court. I mean, I'm not sure why that would be persuasive. Yeah, I understand, Your Honor. Again, we haven't... I don't know what to really tell you. We haven't found any authority. There is the concept that it's substituting for the claims, and it was substituting and replacing the claims when they existed, right? So, that's about all I could say. Yes, Your Honor. This is Judge Wallach. The PTO says that Unilock made no argument to defend the PTO. Is that correct? That's right, Your Honor. I was not counsel there, but my colleagues were, and we did not make any arguments. Our point was that the PTO didn't have authority to rule on 101 in the amendments. And as Your Honor knows, it was then briefed up to the re-hearing, and that became a designated presidential. You've waived any argument here that the substitute claims are valid on the merits. Is that correct? No. Our view is that because the termination to try to even include something like that was arbitrary and capricious, and also because there was no rulemaking in place, that we should be entitled, should the court say, okay, that the PTO can address 101, we should be entitled to remand and address the issue. That's what we're arguing, Your Honor. This is Judge Toronto. Can I ask you this question? Putting aside the present IPR, is it now impossible or possible for Unilock to go to PTO to try to obtain claims 26 to 28, whether through reissue or re-exam or any other mechanism, or is this your one shot at trying to get the patent issued with these three new claims? Judge Toronto, I haven't considered it. I don't want to say good question because the prior case, they mentioned that. I don't know the answer to that, Your Honor. I would have to analyze it in more detail. I'm not aware of any sitting here today, but I don't want to foreclose anything. If there is no possibility of your securing these claims outside this proceeding, then wouldn't it be right to say that there's no invalidity ruling, and on the other hand, an order that would remand for dismissal of the IPR? In both cases, you can never get these claims issued. You're talking about the original claims, not the... No, 26 to 28. Right. Okay. No, Your Honor. I mean, again, I think for the substitute claims, again, I think we still have a valid basis given the timing of when we filed the motion to amend. Let me try to put my question in a way that will be clear. It seems to me that an of your getting these claims because they would have been conclusively determined to be invalid. On the other hand, if we said the board simply had no authority any longer to address proposed substitute claims on any ground, the results presumably would be remand for dismissal of the IPR. And then the question is, if that's what happened, and if reissue or re-exam were unavailable, that too would leave you without any possibility of getting 26 through 28 issued out of the PTO. And so the practical difference between an affirmance and dismissing the IPR proceeding in your case would be none. That's what I'm trying to understand, if what I just said is right. I think, yeah, I understand now, Your Honor. I apologize for not picking up on that. I do agree with that. But again, we would, the remedy we seek is not the, we would want not to be doing this because we want to still pursue the amended claims. Right. I understand. I understand you want an outright reversal saying the board rejected all invalidity grounds except 101, and it had no authority to rely on 101. And therefore, we are entitled to issuance of claims 26 to 28. Yes. And it also, I think Your Honor is aware, it also found that the substitute claims weren't indefinite. It found that we met all the procedural requirements. The only basis it found was the 101. Right. And is there any other, this is now on the kind of the merits of the 101 question rather than the, can an amendment be considered at this point at all? Is there any other circumstance, whether reissue or re-exam or initial exam, in which the patent office issues a claim for the first time without possibility of considering an invalidity ground, namely 101 or any other statutory invalidity ground? Or are you suggesting that in the IPR proceeding, that's what can happen? Indeed, that's what's required to happen, even if it never happens in any other portion of PTO practice? Well, Your Honor, I mean, I guess I would push back a little bit. I'm not aware of anything, but I push back a little bit in that, you know, these are untested claims. They're closely related to the claims, the original claims. And, you know, you've seen the amendments, the appellants, the PELIs, and the government has come up with arguments saying, you know, that theoretically could create some type of issue, but, you know, they're, I wouldn't call them untested. They have been reviewed through their original examination before the PTO. This is a variation of that. These claims have never been reviewed except by this board in the IPR? You didn't draft them until you got to the IPR? That's right, Your Honor. But my only point is, which I think you understand, is there's a relationship between, obviously, the original claims and the substitute claims. They're, you know, they're very close. So, they have, you're right, the language of these substitute claims has not been reviewed. But, counsel, the substitute language that you put in, you put in for purposes of overcoming a ground of unpatentability, which would be an obviousness rejection, right? Right? I'm not, I'm not sure what the motivation for putting them in, Your Honor, was, but that certainly was probably one of the factors. I think it was also- In regulation, it has to respond to a ground of unpatentability, which has to be either an obviousness or an anticipation ground, right? That's right, Your Honor. So, that was the purpose of offering this amended language. So, what does it matter if you have a claim that's not obvious or not indefinite, but the district court has already declared everything in the patent to be unpatentable? Let me just think through Your Honor's question to make sure I understand it. It matters because, again, we've moved during the pendency for the IPR to amend, and I think the PTAP needs to resolve it. Maybe I'm not understanding Your Honor's question. I apologize. Okay. Go ahead. Okay. Can I ask one specific question? Do you read the 316D language to mean that a patent owner can seek an amendment or cannot seek an amendment solely to add a new claim without dropping or within an IPR, and the board institutes an inter-party review? Can you file a motion to amend simply to add a new claim while leaving claim one alone? A non-conditional motion to amend? No. That's not my understanding of the way the PTAP has interpreted it. The word substitute suggests that you cannot do that, but I wanted to find out your view. That's, I think, my view, and I think it's also the PTAP's view, that you can either cancel under A, D1A, or you can substitute, and substitute is inherently contingent. If the original claim is to be unpatentable, then you substitute it. They come part and parcel with each other. Okay. Thank you. I think at this point, I would like to probably, I'm not sure, I'm seeing myself at 13 minutes, so I'd like to reserve some time for rebuttal probably at this point. Okay. Mr. Kelly? May it please the Court. Good morning, Your Honors. I think I'll start just real quickly with the patentability issue. I know that there was a lot of questions today about the mootness issue, but because of how the questioning ended up on patentability, I just want to start with the amendment process. I'm sorry? Before you get to that, can I just do one thing? Can I combine the questions Judge Toronto was asking with the questions Judge Wallach started out with, which is that do you agree that your that the case is not moot, number one? Number two, that the Board does not have the authority to consider 101 in the amendment process? And number three, that he didn't waive any substantive arguments under 101 by the way he approached the issue before the Board? Judge O'Malley, I would say yes as to the first two questions. So, in other words, in order for Uniloc to win anything here, they have to convince you both that the Board was not entitled to consider Section 101 for these newly proposed and never examined claims, and second, that there was no mootness here. The third point, though, that Your Honor raised, whether or not they waived Section 101 defense on the merits, that really would only be relevant in their theory that should this Court affirm the Board's decision not to reach 101, that they now get, I don't know if it's a second, third, fourth, or fifth bite at the apple, to go back to the Board and for the very first time put on an invalidity defense for Section 101. That's where that third point comes up, and we think that is completely off the table. They were given many opportunities to defend these claims on the merits right up until the oral hearing when they were asked during the hearing, do you have any defense at all of your claims on the merits? And they said, no. No, our only defense is that you're not allowed to consider Section 101. So, that's a little bit different than the first two parts of Your Honor's question. So, then let's go back to where you wanted to start, which was the amendment process. So, I just wanted to say that there was a little bit of disconnect, I think, between Judge Taranto's questions and the answers. So, the amendment process is purely a substitution process, and we know this from the language of 316 D1B, where it mentions substituting claims. But that does not mean it's necessarily a contingent process, which is what opposing counsel said. The fact that it's a substitute claim doesn't mean you've got to wait till the end to substitute your claim. You could file a motion to substitute a claim in the middle of a proceeding. And at that point, that amendment would be considered in that proceeding, and the original claims would fall out of the proceeding in terms of what was disputed. But Mr. Kelley, this is, I guess, relating to an aspect of your supplemental filing. Why wouldn't it be right to say that your two separate grounds for trying to, you know, give an affirmative answer to the mootness question would effectively make amendments impossible? Because a non-contingent one would be an amendment that, because it's not contingent, as you just said, you're dropping the original claim. And then under your second theory, there would be nothing to tether it to. And a contingent one would be too late, in your view, in which case, there's no such thing as an amendment. Tell me what's wrong with what I just said. So I think the problem with that understanding, Your Honor, is that what we have here is we have the district court invalidity decision and this court's affirmance of that. So if we take that off the table, which I don't think you're hypothetical considered... Why would it matter if the original claim disappears because it's disclaimed or has been adjudicated finally invalid? There's still nothing to, as you say in your second ground, tether the amendment to. Well, Your Honor, my response to that would be that in the IPR proceeding itself, it has not ended yet. So even though there's a non-contingent motion to amend that pulls the original claim out of the proceeding and injects into it the substitute claim, that doesn't mean that at that moment in time, the patent was amended in that way. I'm sorry, it hasn't been amended. I assume that there's been no certificate issued or tell me if there has been canceling the original claims. There has not been, Your Honor. No, no, there can't be because the PTO thinks that the amendment is a live issue. Well, not just that, Your Honor, but that's how the statute is structured. It's structured just like the re-examination statute. In other words, all of the decisions, the back and forth between the examiner and re-examination or the PTAB in the case of IPRs, all of that occurs sort of while the proceeding is alive. And then the actual operative event that changes the scope of the patent is the issuance of the certificate. When the final written decision was issued, why the PTR, I'm sorry, the IPR was still alive if only to seek rehearing, right? It's not that IPR is not over. Well, the way the statute's written, the final written decision is the close of the IPR. I accept that you could request a reconsideration of that decision, but that is sort of the end of the proceeding. That's what the final written decision is. IPR, in the IPR, and we laid this out in AQA products, but the same thing you just said, which is it is after the final written decision that then a, you know, there is a certificate that says what claims continue to exist and what claims don't, right? Right. And during the IPR. Right. So during the IPR and not until the final written decision does that certificate of patentability or unpatentability as to each of the individual claims or substitute claims get issued, right? Right. And so typically a year or more later, because you don't issue it until appellate review is done and then you wait until, and there's nothing particularly urgent, right? It's not like, the certificate doesn't issue when the final written decision issues. That's right, Your Honor. And so to return back to Your Honor's question, the reason why the IPR itself doesn't trigger this mootness issue is because the act of filing what would be a non-contingent motion to amend, which I think was Your Honor's hypothetical, all that does is change what's involved in the proceeding. It doesn't mean at that point that the first claim is gone. And so it's sort of in a weird way, triggers a stopple making all amendments essentially impossible. The reason why the amendment here became the motion to amend is not only that it was contingent, but of course, because of this court's affirmance of the collateral district court's invalidation of all of the claims in the past. That scenario would not occur intrinsically in the IPR itself. And the contingent nature of the motion to amend here is significant in this case. They didn't file a motion during the proceeding. They didn't, as SAS recognized, change what was involved in the proceeding. I'm sorry, I'm sorry. What do you mean they didn't file a motion during the proceeding? They filed the motion under the rules many, many, many months before the final written decision. Your Honor, I think I would disagree with that. What they filed- And what's the date of the final written decision? The date of the motion, I believe, should be 30 days after the institution decision. Right, so that's well before the final written decision. Your Honor, that date is, but what they filed on that date was a contingent motion. Which said, if the board finds the original claims invalid, then please consider the following change. You're reading find to mean something other than the three panel members concluding it along the way toward the process of writing a single decision that addresses both the original claims and the motion to amend? No, that's not the point I'm making. The point I'm making is that the contingent nature of the motion means that the motion itself did not, in essence, spring to life until that final written decision was being written. I'm sorry, that requires you to equate the word find, which is both in the opening sentence of the motion to amend and in the conclusion, 313 and 332, I think of the appendix, to mean issues a final written decision, which is not ordinarily what I would think find to mean. The common sense is, if you, in the course of considering everything in front of you, disagree with our primary contention, then please address our secondary contention. And isn't that the utterly normal way that alternative inconsistent pleading works in all civil litigation? Go on. I find this extremely peculiar, obviously. Well, you know, I don't think we can sort of, you know, pull back the curtain and sort of examine what is going on in the heads of the judges at the PTAB. I mean, the operative event... The question is, what's in the pleading? The pleading says, if you disagree with our major contention that the original claims are valid, then please consider the alternative claims. Why isn't that garden variety alternative inconsistent pleading recognized under Rule 8 of the Civil Rules and, you know, utterly common? Well, Your Honor, I guess I would just maintain that that finding, when you have a three-judge panel, does not become effective until they actually reach their decision. And the only statutory framework we have for trying to figure out when that happened is Section 318A. I can't point to any other part of the AIA that sort of triggers a date upon which the board makes an internal finding about the strength of the original claims and then moves on to a contingent motion. It's a statutory scheme, and that's what Your Honor's suggesting just isn't in the statute. The board's determination... Mr. Kelly, does it really matter whether it was a contingent or not? I mean, your contingency argument has more to do with whether the board has found all the claims invalid, and I think that Judge Taranto has a good point. You can have alternative arguments that are made in a pleading, but in this case, whether it was contingent or not, it didn't become final before the district court decision became final. Right? Well, before the district court... May I continue? Yes. Okay. It became... I mean, when the final written decision came out, that was their decision. I guess the actual absolute finality of that decision still hasn't happened because we're here on appeal right now. That's what Your Honor is getting at. Yes. Okay. Just to double check on the timing, the district court's decision on 101 was months before the institution in this IPR, right? I don't know if it was months before institution, Your Honor, but I think... March to August. It was, yes, and it was, I think, more significantly prior to the contingent motion, and I think that Unilof points that out in their blue brief at page eight, that the reason that they filed their contingent motion was at least in part to overcome the 101 infirmities that the district court had identified. Right, but our decision didn't become final until after the final written decision in this case. About a week later, that's right, and because of that decision, the final written decision aspects that triggered the contingent motion, we would say, became moot, and even if they didn't, we would say the board's decision on the merits about whether or not they can reach section 101 in an IPR are essentially unassailable. Mr. Kell, can I ask you just one final question, the same question I asked? Counsel for Unilof, in your understanding of reissue, re-exam, other PTO mechanisms, is it too late now for Unilof to seek issuance of 26 through 28 through some process outside this IPR, or is the IPR, that is, is the IPR their one shot at these claims? I think now it is their one shot. They could have filed a reissue application prior to the invalidation of the claims of their original patent, and if they had done that, which they could have done, they could have sought a narrowing claim from a reissue, and incidentally, when that reissue patent opened, the window would have opened back up for a PGR challenge, and those claims could have been challenged under section 101. Okay, thank you. But as of now, this is the only way for them to get this claim. As far as I know, and if they got it, based on the reasons that they're arguing, they will be the first patentees in our system, since the early part of the 18th century, when we switch to an examination system, that will have obtained new, unexamined claims in U.S. patents, not subject to scrutiny under the patentability provisions in effect. And with that, I'll yield. Did you really mean the early part of the 18th century? I meant the 19th century. I was thinking 1800. Thank you, Judge Walsh. Thank you. Okay, let's hear from the PTO. Ms. Rasheed? Thank you, Your Honor. May it please the Court, Frayne Rasheed, on behalf of the USPTO. With me is my colleague from the Department of Justice, Jeffrey Sandberg. We believe that the best reading of the statute permits the Board to consider the eligibility of amended claims to the extent that this Court has questions about Chevron Step 2. Jeff Sandberg is here to answer any of those questions. Since we left off discussing mootness, I can begin there, unless the Court would like me to address the merits issues. No, that's fine. On the mootness issue, we believe that this case is not moot for the reasons given in our supplemental brief. In addition to that, I mean, I do agree that this is, as Judge Trotter pointed out, this is their only one shot to get these claims. I don't think they have access to reissue or reexamination because the mandate is already issued with respect to the original claims. I don't know if they have a continuation application pending where they can try to insert these claims there, but I don't see any other avenue for them to seek these claims. But that avenue does require this Court to reverse and to hold that the agency is not authorized to consider a 101 for amended claims. As the Appellee's Council pointed out, that would be a real shift in the law when it comes to new and unexamined claims. Since the Patent Act of 1836, we have always provided for some type of examinational process for new and unexamined claims. On the merits, I'd like to just quickly say that we think patentability in Section 318 is relatively broad, and it means what it says, all the requirements for patentability. But as this Court found in Samsung, 318A has to be understood in context, and that context for original claims is limited to patents and printed publications under 102 and 103 grounds. But that really is the only... Can I continue? Yes, you can finish your sentence. That really is the outlier, though. That understanding of patentability for original claims is the outlier. It's the unusual meaning. The rest of the use of patentability, whether it's for amended claims in IPRs or amended and original claims in PGRs, means the same thing. It means every condition of patentability. The fact that 318 is so broad and grants us this broad authority, 316 tells us that it doesn't provide any limitations as to what we can consider on motions to unbans, and the fact that this Court in Nike v. Adidas provides a complete answer to Uniloc's argument about why the observations in SAS about the adversarial process don't necessarily extend to amended claims, we think it makes sense for us to be able to perform a full patentability analysis that's consistent with our duty to issue valid claims. And we cannot perform that duty if we're foreclosed from engaging, of course, with appropriate notice, the full panoply of patentability issues that are brought for us. Okay. Thank you. Mr. Sandberg, we didn't really talk anything about or talk about the Chevron issue, and I know that Mr. Kelly might have opinions on that, but if you want to just say something for 60 seconds, we'll allow it. That's okay. I'm just here to answer any questions that the Court may have on the issue. As my colleague just explained, we think the only plausible way of reading the statute is the way that the Board did here. If the Court thought the statute was susceptible to other interpretations, we think the appropriate course would be to defer to the agency's view. But if there are no questions from the Court, then we're happy to stand on our brief. Okay. Can I just say, I just wanted to ask a question. Do you have a continuation application that in which you either currently have or could add or by a further continuation try to get 26 through 28 issued from the PTO? This is Mr. Sandberg from the Department of Justice. Oh, I'm sorry. I'm sorry. Wrong person. Sorry about that. Okay. We'll save that question for later. Judge Wallach, do you have anything for Mr. Sandberg? I don't. Thank you. Okay. Thank you, Mr. Sandberg. All right. Because we went over with Mr. Kelly, I'll restore two minutes to your rebuttal. Okay. Thank you, Your Honor. You might want to start with Judge Taranto's question. I don't know the answer to that, Your Honor. I could try to scramble for it, but I don't want to cut into my time too much. I'm sorry. I don't know. I don't believe there's any continuation pending, but I don't know offhand. I haven't looked into that. I would very much appreciate getting an answer after the argument because it's rather important for me to understand what, if any, difference there is between an undesirable affirmance to you and a dismissal of the IPR proceeding. Your Honor, we're happy to provide some type of supplemental submission, maybe a supplemental authority where you could provide that. I can track that answer down for you, Your Honor. Thank you. Okay. I just want to briefly talk about the ambiguity, which the PTO's counsel talked about. I don't want to get into the details of it, but just really touch upon the friction points and the approaches. Both sides say that the language is unambiguous, but they reach opposite conclusions. I think what Unilock indicates is something very similar in Ofquote products. It recognizes that the relationship between the petition defines the scope of the IPR just like in traditional pleadings. That really has a ripple effect through the proceedings. 311, we would argue, affects the scope of the whole proceeding. It does talk about what in the petition talks about what the petitioner could do, but it also talks about the grounds. This court in Ofquote products' concurrence talked about the proceedings being limited to 102 and 103. Now, they raise issues like the Nike-Viejitas case. That's a case where in the context of doing their 102 and 103 duty, they look at whether the narrow claims are supported by the written description. That's very similar to the statutory requirement in the IPR statute. That's not sweeping in everything. At one point, you're raising their brief. If they're going to say an amended claim brings in all forms of patentability, then the logical conclusion would be it would bring in things like non-printed or public use or on sale bar. Clearly, that's not what Congress intended here. They seem to be picking and choosing what they could get, but it's a real slippery slope to let all of those in. The other thing that they do is they start looking at the definition of patentability in 318, which is the end result. It's an inverted analysis where they look at patentability and they come up with general definitions. It's really more of a tail wagging the dog, where they're saying, here's what it means to everything. I think the proper way to view the scope is to look at the statute, similar to the aqua products and the concurrence, looking at the comprehensively, holistically, how everything fits together. With that understanding, you realize the reference to patentability is not this wide open... Can I finish, Your Honor? Yes. Yes. It's not a wide open invitation to sweep in everything, including things like public use and 101. The term patentability in 318 is in the context of the proper scope, which is limited to 102 and 103 and patents and printed publications. Okay. Thank you, counsel. The cases will be submitted. Court is adjourned. The honorable court is adjourned until tomorrow morning at 10 a.m.